UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

         -against-

FOO YUAN FOOD PRODUCTS
COMPANY, INC., HSING CHUANG
(aka George Chuang), and SUSAN
CHUANG,

                Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
18 CV 4689 (ENV)(CLP)

**POLLAK**, United States Magistrate Judge:

On August 20, 2018, the United States of America (the "government") commenced this action against defendants Foo Yuan Food Products Company, Inc. ("Foo Yuan"), Hsing Chuang, a/k/a "George Chuang," and Susan Chuang (collectively, "defendants"), alleging that the defendants were in violation of provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 331(a) and 331(k) (the "Act"), and seeking to enjoin them from introducing into interstate commerce adulterated food products. (Compl.[1] ¶ 1).

Despite proper service, defendants failed to answer or otherwise respond to the Complaint. (Pl.'s Mem. at 2,[2] ECF No. 5). On November 13, 2018, the government requested a Certificate of Default and on November 15, 2018, the Clerk of Court entered a notation of

---

[1] Citations to "Compl." refer to the Complaint filed on August 20, 2018.
[2] According to the government, defendant Susan Chuang was served by personal service on September 11, 2018; Foo Yuan was served by personal service on the company's authorized agent for service, Susan Chuang, on the same date. Defendant Hsing Chuang was served at his place of business also on September 11, 2018. (Plaintiff's Memorandum of Law in Support of Motion for Default Judgment and Order ("Pl.'s Mem.") at 2-3, filed March 21, 2019, ECF No. 13).

1

default. (ECF Nos. 6, 9). Thereafter, plaintiff filed the instant motion for default judgment, which was referred to the undersigned to issue a Report and Recommendation. (ECF No. 13). Defendants have failed to respond to the Motion for Default, and have failed to submit any paperwork to the Court in response to the Motion for Default Judgment.

For the reasons set forth below, the Court respectfully recommends that the government's motion for default judgment be granted, and that an injunction issue in the form attached to the government's motion papers.

## FACTUAL BACKGROUND

According to the Complaint, Foo Yuan Food Products Company is a privately held New York corporation, located at 2301 Borden Ave., Long Island City, N.Y. (Compl. ¶ 4). Defendant Hsing Chuang is alleged to be the owner and president of Foo Yuan and Susan Chuang, Mr. Chuang's daughter, is alleged to be the Secretary of Foo Yuan. (Id. ¶¶ 5, 6). Defendants prepare, manufacture, process, pack, hold, and distribute refrigerated and frozen ready-to-eat fish balls, fried fish cakes, and fried fish balls, packaged in reduced oxygen packaging ("ROP"). (Id. ¶ 7). According to the Complaint, 40% of defendants' products are distributed to Summit Import Corporation, a wholesale distributor located in New Jersey. (Id. ¶ 8).

The government alleges that seafood packaged in ROP is particularly susceptible to the growth of *Clostridium botulinum* ("*C. bot*"), a bacterium which, if ingested in even small amounts, can cause botulism. (Id. ¶¶ 10, 12). The government further alleges that *Listeria monocytogenes* ("*L. mono*") is a bacterium that causes listeriosis. (Id. ¶ 13). The presence of *L. mono* in a facility that processes ready-to-eat food products poses a significant public health risk;

therefore, it is necessary to have strict sanitation procedures in place to prevent contamination of food contact surfaces to eliminate L. mono. (Id. ¶¶ 14, 15).

A seafood processor's failure to comply with the requirements of the seafood regulations, 21 C.F.R. § 123 ("HACCP regulations") renders its fish products "adulterated" within the meaning of 21 U.S.C. § 342(a)(4) (defining "adulterated" food as having "been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health"). Under HACCP regulations, every fish and fishery product processor must conduct a food safety hazard analysis and when a safety hazard is identified, must implement a HACCP Plan to control the hazards. (Compl. ¶¶ 19, 20). Food safety hazards include "any biological, chemical, or physical property that may cause a food to be unsafe for human consumption." 21 C.F.R. § 123.3(f). The Complaint alleges that defendants are subject to the seafood HACCP regulations because they process fish or fishery products and are "importers" as defined in 21 C.F.R. § 123.3(g). (Compl. ¶ 22).

The Food and Drug Administration ("FDA") conducted an inspection of defendants' facilities between December 4, 2017 and January 10, 2018 (the "January inspection"). (Id. ¶ 24). During the January inspection, the FDA inspectors identified "significant" HACCP violations, as well as deficiencies in compliance with Current Good Manufacturing Practice ("cGMP") regulations for food pursuant to 21 C.F.R. § 110. (Id.) Defendants Hsing Chuang and Susan Chuang participated as company representatives and provided information to the FDA inspectors. (Id.) The FDA provided defendants with a List of Inspectional Observations that included: 1) a failure to identify and list in the HACCP plan critical limits necessary to control hazards; 2) failure to follow corrective action plans identified in the HACCP plan; 3) failure to develop and implement a corrective action plan appropriate for a specific deviation; 4) failure to

monitor sanitation conditions during processing, including failing to comply with cGMP requirements to maintain the cleanliness of food contact sources; and 5) failing to ensure that all persons working in direct contact with the food or food surfaces conform to hygienic practices. (Id. ¶¶ 24(A) – (D) (citing 21 C.F.R. § 123.6(c)(3), 123.7(a) – (b), 123.11(b); 21 C.F.R. § 110.10(b)(1), 110.35(d))).

The government further alleges that several of the deficiencies observed during the January inspection had been identified in earlier FDA inspections of the defendants' facility: the first conducted between October 14 and 20, 2014 (the "October inspection") and the second conducted between June 14, 2016 and July 14, 2016 (the "July inspection"). (Compl. ¶ 28). Following the October inspection, the FDA issued a Warning Letter notifying defendants that they were in violation of seafood HACCP and cGMP regulations. (Id. ¶ 31). Following the July inspection, the defendants met with FDA representatives to discuss the continued deficiencies and Susan Chuang committed to correcting those deficiencies. (Id. ¶¶ 33, 34). However, based on the January 2018 inspection, during which the FDA identified the same types of violations, the government contends that injunctive relief to restrain the defendants is necessary. (Id. ¶ 35).

## DISCUSSION

A.  Default Judgment

Plaintiffs move for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Prior to the district court's grant of default judgment, the Clerk of the Court entered a default because defendant "failed to plead or otherwise defend" against the instant Complaint. Fed. R. Civ. P. 55(a). A clerk's entry of default is not the same as a default judgment granted by the court. Rather, Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90,

4

95 (2d Cir. 1993). After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). In this case, the Clerk of the Court entered a default against defendant on November 15, 2018, and the motion for default judgment was filed on March 21, 2019. (ECF Nos. 9, 13).

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). When evaluating whether to grant a default judgment, the Court must weigh the costs of prolonged litigation against offering "litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; see also Meehan v. Snow, 652 F.2d at 277. It is well-settled that defaults are "generally disfavored" and "doubts should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. As such, courts should take great care in entering default judgment, ensuring if at all possible that both parties may have their cases judged on the merits. Id.

A court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established," "the amount of money potentially involved," and the record of attempts to involve the defaulting party in the proceedings. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain

Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (3d ed. 1998).

B.      Entry of Default Judgment

The government argues that a default judgment should enter in this case because the defendants' failure to respond to the Complaint, to the request for a Certificate of Default, and this Court's Order, dated October 17, 2019, asking for a status letter, was willful. (Pl.'s Mem. at 4 (citing United States v. McDermott, No. 12 CV 4440, 2014 WL 1272566, at * 3 (E.D.N.Y. Feb. 14, 2014); Northwell Health, Inc. v. Northwell Staffing Agency, No. 17 CV 1611, 2018 WL 1525803, at *4 (E.D.N.Y. Mar. 1, 2018) (finding that "[w]hen a defendant is continually and entirely unresponsive, a defendant's failure to respond is considered willful") (internal quotations omitted).

The government also argues that defendants have no meritorious defense to the action. (Pl.'s Mem. at 5). Where the defendant fails to present a defense to the court, the allegations in the Complaint are deemed admitted. Indymac Bank, F.S.B. v. National Settlement Agency, Inc., No. 07 CV 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). In the absence of any response to the Complaint, the Court is unable to determine if defendants have a defense to the action.

Based on the allegations in the Complaint, the government has stated a plausible claim that defendants violated the Federal Food, Drug and Cosmetic Act. Moreover, in this case, it is beyond dispute that defendants are in default, since defendants failed to file an answer to the Complaint, failed to oppose plaintiff's motion for a default judgment, and failed to challenge the Court's entry of a default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that the defendant's default was "crystal clear" as evidenced by its failure to oppose plaintiff's

motion for a default judgement). Despite the numerous opportunities afforded defendants, defendants apparently lack interest in participating in these proceedings.

Given that the government has duly served all orders and motions on defendants, and defendants have refused to move in any way whatsoever with respect to the instant case, this Court respectfully recommends that default judgment be granted against defendants. Numerous opportunities have been afforded defendants, and as they apparently lack interest in participating in these proceedings, the Court finds no compelling reason to delay further in entering a default judgment.

C.   Injunctive Relief

The government is not seeking monetary damages in this case. Instead, the government only seeks entry of an injunction to prevent the defendants from committing violations of the Act. Pursuant to 21 U.S.C. § 332(a), federal courts "have jurisdiction, for cause shown to restrain violations of section 331 of [the Act] . . . ." This Court has held that injunctive relief is available even in the absence of proof of actual harm. United States v. Bel Mar Labs, Inc., 284 F. Supp. 875, 881 (E.D.N.Y. 1968). Here, the government has established that the defendants were in violation of the Act by introducing fish and fishery products that are adulterated within the meaning of 21 U.S.C. § 342(a)(4), in that the food products held for sale after interstate shipment were prepared, packed or held in unsanitary conditions, whereby products may have become contaminated with filth or rendered injurious to health.

Plaintiffs seek to enjoin defendants and their officers, directors, agents, representatives, employees, attorneys, successors, and assigns from "directly or indirectly receiving, preparing, processing, packing, labeling, holding, and/or distributing any article of food at or from their

facility located at 2301 Borden Ave., Long Island City, NY 11101[.]" (Prop. Order[3] at 5).  The Proposed Order further requires the defendants to, inter alia:  1) retain, at their own expense, an independent laboratory to analyze product and environmental samples for the presence of *Listeria monocytogenes*; and 2) retain an independent expert to (a) conduct hazard analyses and plans for defendants' products; (b) verify the adequacy of the written HACCP plans; (c) develop Sanitation Standard Operating Procedures; (d) develop a monitoring program for *Listeria monocytogenes*; (e) collect samples and evaluate defendants' compliance with current good manufacturing practices; and (f) provide training programs for employees, and inspect the facilities to determine that they are operated within the regulations of the Act.  (Id. ¶ 5(A) – (B)).  The Proposed Order details further the responsibilities that defendants must undertake, including FDA approval of these various steps, if they wish to remain in business.  (Id. ¶ 5(C) – (K)).  The Proposed Order requires the defendants to continuously implement these various monitoring programs once the FDA has approved the resumption of operations, and requires the defendants to collect samples for testing for a period of time.  (Id. ¶¶ 7, 9).

The Proposed Order further enjoins defendants from violating 21 U.S.C. § 331(a) and 331(k) by introducing any article of food into interstate commerce or by causing any food item to become adulterated while the article is held for sale after shipment in interstate commerce.  (Id. ¶ 10(A), (B)).  Under the Order, the FDA has the right to conduct an inspection of the defendants' facility, without prior notice, and, if the FDA determines that defendants are not in compliance with the Order, the Act, or the regulations, the FDA must give notice of the noncompliance and can direct that defendants cease receiving, preparing, processing, holding or

---

[3]Citations to "Prop. Order" refer to the Government's proposed Default Judgment and Order Pursuant to Fed. R. Civ. P. 55, ECF No. 16, filed March 21, 2019.

distributing any food articles.  (Id. ¶¶ 11, 12).  Finally, defendants are Ordered to provide records to the FDA and to pay all costs of FDA inspections, investigations, testing, and supervision at the rates set forth in the Proposed Order.  (Id. ¶¶ 13, 15).

Having reviewed the Proposed Order, the Court finds that the provisions of the injunction are reasonable and respectfully recommends that the district court enter the Proposed Order in its entirety.

## CONCLUSION

For the reasons set forth above, the Court respectfully recommends that the government's motion for default judgment be granted, and that an injunction issue in the form attached to the government's motion papers.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); 28 U.S.C. § 636 (a), 6(d); Caidor v. Onandaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       October 30, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York